*616
 

 MEMORANDUM
 

 LOWELL A. REED, Jr., Senior District Judge.
 

 I. BACKGROUND
 

 One of the great wonders of the modern global economy is the ironies it produces. Nations rich in natural resources are among the world’s poorest. Technology brings people closer together, while economic and cultural divisions drive peoples apart. American icons such as Michael Jackson and the television drama “Baywatch” are more popular overseas than in the United States. This declaratory judgment action is rooted in an irony of the culinary variety; the collapse of a business deal in which an American company was to send pizzas to Italy.
 
 [1]
 

 
 *617
 
 According to the complaint in the underlying action, the saga leading up to this case began in May 1994, when defendant Armando Ferroni (“Ferroni”), an Italian businessman, and defendant Gary W. Black, Sr. (“Black Sr.”), on behalf of his company, defendant Nouveau International, Inc. (“Nouveau”), explored the possibility of a pizza-related business arrangement. Black Sr. had invented a method of preserving microwaved dough products and incorporated it into a robotic pizza vending machine. He sought Ferroni’s assistance in delivering these machines to Europe. During those initial discussions, Black Sr. allegedly represented to Ferroni that his company, Nouveau, was financially sound.
 
 [2]
 

 Ferroni believed Nouveau’s pizza vending machine had all the ingredients of success and agreed to market Nouveau’s machines in Italy and Europe. In February 1995, Ferroni, joined by fellow Italian businessman Marco Fojanini (together, the “Italian defendants”), entered into an agreement with Nouveau under which the Italian defendants would serve as Nou-veau’s exclusive marketer and distributor in Europe. Allegedly in reliance on the Blacks’ representations concerning the financial soundness of their company, the Italian defendants invested a significant amount of their own funds in promoting the Nouveau machines in Italy and Europe, purchasing numerous pizza machines, and entering into distribution contracts.
 

 A dispute between the parties began to mushroom when Nouveau and the Blacks failed to deliver on numerous assurances. The machines sent by Nouveau to Ferroni and Fojanini were defective in several respects due to technical and aesthetic incompatibilities with Europe,
 
 [3]
 
 and Nouveau did not promptly address the defects, despite promises that it would do so. Without working machines to test or show to customers, Ferroni and Fojanini’s business prospects fell like dominos.
 

 Topping it all
 
 off
 
 was the fact that Black Sr.’s lofty account of Nouveau’s financial status was mere pie in the sky; in December 1995 Black Sr. admitted to the Italian defendants Nouveau was in bankruptcy, and had been throughout their relationship. Black also revealed that Nouveau had sued an individual for overselling its distributorships and another corporation for supplying Nouveau with defective pizza vending machines. In February 1996, Black Sr. promised to compensate the Italian defendants for their losses, but they never received the full amount promised.
 

 Fojanini and Ferroni sought a slice of the profits from the sales of the pizza machines, and in April 1996, the parties renegotiated their exclusive distributorship deal to require Nouveau to make monthly payments to the Italian defendants of $20,-000 plus a percentage from the sale of every machine. However, the Italian defendants later discovered that Black Sr. made deals with other distributors in Europe in apparent violation of the agreement. Nouveau continued to deliver deficient machines to the Italian defendants.
 

 Finally, in August of 1996, Black Sr. told Fojanini and Ferroni that he was no longer the president of Nouveau, and referred them to the new president, Chris Plunkett,
 
 *618
 
 who, the Italian defendants claim, reneged on Black Sr.’s April 1996 promise to provide monthly financial support and failed to resolve outstanding issues related to the pizza machines and food product. Black Sr. also informed Fojanini and Ferroni that Nouveau had no intention of changing the pizza ingredients and nevertheless insisted that they purchase additional Nou-veau vending machines. Fojanini and Fer-roni brought a suit against Nouveau, Black Sr., and Black Jr. in May 1997, stating tort claims of fraud, and intentional and negligent misrepresentation.
 
 [4]
 

 Defendants Black Sr., and Black Jr., sought coverage in that suit under a directors and officers, liability insurance policy that Nouveau purchased from plaintiff American Guarantee Liability and.Insurance Company (“American Guarantee”).
 
 [5]
 
 American Guarantee then filed this suit, seeking a declaration that it has no duty to cover or defend in the underlying action. Plaintiff and defendants Fojanini, Ferroni, and Europe Invest have filed cross-motions (Document Nos. 22 and 23) for summary judgment in this declaratory judgment action.
 
 [6]
 

 For the following reasons, upon consideration of the parties’ motions and the evidence pursuant to Rule 56 of the Federal Rules of Civil Procedure, the motion of plaintiff will be denied, and the motion of defendants will be granted in part and denied in part.
 

 II. ANALYSIS
 

 According to Rule 56(c) of the Federal Rules of Civil Procedure, “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law,” then a motion for summary judgment must be granted. The question before the Court at the summary judgment stage is “whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.”
 
 See Anderson v. Liberty Lobby, 477
 
 U.S. 242, 251-52, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court’s role at summary judgment is not to weigh the evidence, but to determine whether there is a genuine issue for trial; that is, an issue upon which a reasonable jury could return a verdict in the non-moving party’s favor.
 
 See id.
 
 at 249, 106 S.Ct. at 2511.
 

 The moving party “bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of ‘the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,’ which it believes demonstrate the absence of a genuine issue of material fact.”
 
 Celotex Corp. v. Catrett, 477
 
 U.S. 817, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party must then “go beyond the pleadings and by her own affidavits, or by the ‘depositions, answers to interrogatories, and admissions on file,’ designate ‘specific facts showing that there is a genuine issue for trial.’ ”
 
 Id.
 
 at 324, 106 S.Ct. at 2553.
 

 In deciding whether there is a disputed issue of material fact, the “inferences to be drawn from the underlying facts ... must
 
 *619
 
 be viewed in the light most favorable to the party opposing the motion.”
 
 Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting
 
 United States v. Diebold, Inc.,
 
 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). On cross-motions for summary judgment, the court must determine separately on each party’s motion whether judgment may be entered in accordance with the summary judgment standard.
 
 See Sobczak v. JC Penny Life Ins. Co.,
 
 1997 WL 83749 (E.D.Pa. Feb. 18, 1997),
 
 aff'd,
 
 129 F.3d 1256 (3rd Cir.1997) (citing 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane,
 
 Federal Practice and Procedure
 
 § 2720, at 23-25 (2d ed.1983)).
 

 Both parties agree that the construction of the terms of the policy are governed by Pennsylvania law.
 
 See Travelers Indem. Co. v. Fantozzi, 825
 
 F.Supp. 80, 84 (E.D.Pa.1993). Under Pennsylvania law, the interpretation of the terms of an insurance contract is a question of law to be decided by the Court, and where there is no genuine issue of material fact, there is no need to submit the issue to a jury.
 
 See Rich Maid, Kitchens, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.,
 
 641 F.Supp. 297, 306 (E.D.Pa.1986),
 
 aff'd,
 
 833 F.2d 307 (3d Cir.1987) (citing
 
 Pacific Indem. Co. v. Linn,
 
 766 F.2d 754, 760 (3d Cir.1985)).
 

 A. Prior Knowledge Exclusion
 

 American Guarantee first argues that it owes no coverage because of an exclusion in the policy that reads, “The Underwriter shall not be liable for loss on account of any Claim made against an Insured Person based upon, arising from, or in consequenxo [sic] of any facts, circumstances, acts, errors, or omissions disclosed or required to be disclosed in response to questions 8 or 9(c) of the application to this policy....” (Motion of Plaintiff for Summary Judgment, Exhibit 1, Directors and Officers Liability and Reimbursement Policy, Endorsement No. 1, at 1). Question 8
 
 of the
 
 application reads:
 

 Does any director or officer of the Applicant Corporation or its subsidiaries have any knowledge or information of any act, error, omission or other circumstance which he/she believes either will give rise or could give rise to a lawsuit being filed or a claim being made against the directors and officers under the proposed insurance?
 

 (Motion of Plaintiff for Summary Judgment, Exh. 2, Directors and Officers Liability and Company Reimbursement Application, at 3). On Nouveau’s application, which was completed on September 30, 1996, Question 8 was marked “No”. American Guarantee argues that an officer or director of Nouveau must have known of the misrepresentations made to Fojanini and Ferroni because Black Sr., an officer of Nouveau, allegedly made the very misrepresentations on which the underlying claims were based. In light of Black Sr.’s knowledge of the misrepresentations, American Guarantee argues, the burgeoning dispute between Nouveau and Fojanini and Ferroni was “required to be disclosed” on the application. Plaintiff thus urges the Court to conclude that the exclusion operates to deny coverage to the Blacks in the lawsuit arising out of the relationship between Nouveau and Fojanini and Ferro-ni.
 
 [7]
 

 
 *620
 
 The applicability of the exclusion turns on the question “What did [Nouveau] know and when did [it] know it?”
 
 [8]
 
 The answer to this question depends on what kind of proof of Nouveau’s knowledge is required. For this, we look to the policy. The exclusion applies to acts, errors, or omissions “required to be disclosed in response to question[ ]8.” Question 8 asks whether any director has any “knowledge or information” of acts errors or omissions “that he/ she believes either will give rise or could give rise” to a claim or lawsuit. Thus, the American Guarantee policy sets forth a purely subjective standard of proof, requiring evidence of actual knowledge on the part of a company official that a claim or lawsuit could arise.
 

 I therefore conclude that American Guarantee may deny coverage based on the prior knowledge exclusion only if there is evidence that (1) an officer or director of Nouveau knew of certain facts related to any acts, errors, or omissions taking place prior to the effective date of the policy and (2) the director or officer in possession of such facts believed they would or could give rise to a lawsuit or claim under the policy.
 
 [9]
 

 American Guarantee presents as evidence of the first element the September 26, 1996, letter of Paul S. Haar, attorney for Fojanini and Ferroni, to Chris Plunk-ett, who apparently was the president of Nouveau. (Motion of Plaintiff for Summary Judgment, Exhibit A, Letter from Paul S. Haar to Chris Plunkett, Sept. 26, 1996, at 1). The letter outlined the history of the relationship between Nouveau and Fojanini and Ferroni, and included allegations of misrepresentation, fraud, and breach of contract. The letter was sent by fax and first class mail four days before Nouveau filled out the insurance application and more than a week before the “effective date” of the insurance policy. The Italian defendants neither deny that this letter was sent nor claim that Plunkett never received it. The letter apprized
 
 *621
 
 Plunkett, an officer of Nouveau, of “certain facts” related to the underlying disagreements in the relationship, particularly Fo-janini and Ferroni’s belief that Nouveau officers made misrepresentations to them and breached agreements with them. (Motion of Plaintiff for Summary Judgment, Exhibit A, Letter from Paul S. Haar to Chris Plunkett, Sept. 26, 1996, at 8, 7). Therefore, a reasonable jury could find that the first element of the analysis is satisfied.
 

 The second element of the analysis asks whether an officer or director of Nouveau actually believed a claim would or could arise out of the dispute with Ferroni and Fojanini.
 
 [10]
 
 American Guarantee has not demonstrated an absence of a genuine issue of material fact as to this element. American Guarantee points to the September 26 letter from the Italian defendants’ counsel. However, the letter provides no information as to what any Nouveau official actually believed concerning the potentiality of a lawsuit;
 
 [11]
 
 it merely summarizes the course of dealing between Nouveau and the Italian defendants, articulates the complaints of Ferro-ni and Fojanini arising out of their relationship, and seeks resolution, but does not threaten a claim or lawsuit. Indeed, the letter ends with hope for amicable resolution and depreciates the thought of litigation. There is no deposition testimony or affidavit on the record as to the state of mind of Plunkett or any other Nouveau official. The facts certainly are not so one-sided that American Guarantee is entitled to judgment as a matter of law on this issue, as a reasonable jury could find that despite the letter, no Nouveau official believed a lawsuit could arise out the matters detailed therein. Therefore, the motion of plaintiff American Guarantee for summary judgment on its first claim of relief will be denied.
 

 Fojanini and Ferroni also move for summary judgment as to American Guarantee’s first claim for denial of coverage, asserting that there is no genuine issue of material fact as to whether Nouveau’s answer of “No” on Question 8 of the application operates to deny coverage in this case. Even drawing the inferences most favorably to the non-moving party, American Guarantee, I conclude that a reasonable jury could not find on the evidence now before me that a Nouveau official
 
 in fact
 
 believed a lawsuit could arise out of Black Sr.’s and Black Jr.’s alleged misrepresentations to Ferroni and Fojanini. The letter to Plunkett does not provide any insight into the subjective knowledge of any Nouveau officer. The factual record is devoid of any direct evidence that a Nou-veau officer or director believed that Fo-janini or Ferroni might sue over alleged misrepresentations made to them by Nou-veau; there is neither deposition testimony on the record from any Nouveau official, nor are there any letters or other correspondence from Nouveau officials on the matter. Thus, there is no genuine issue of material fact concerning the subjective beliefs of Nouveau’s officers and directors about the likelihood of a lawsuit by Fojani-
 
 *622
 
 ni and Ferroni against Nouveau at the time the application for insurance was prepared by Nouveau. Therefore, defendants’ motion for summary judgment will be granted on American Guarantee’s the first claim for relief.
 

 B. Wrongful Acts Committed During the Policy Period
 

 American Guarantee sets forth a sophisticated argument in moving for summary judgment on both its second and third claims for relief. The argument begins with the assertion that most of the wrongful acts alleged by Fojanini and Ferroni in the underlying complaint took place before January 1,1996, the retroactive date of the insurance policy, and thus were not covered by the policy. Plaintiff then contends that the Court may only examine the acts alleged in the underlying complaint to have taken place during the policy period, and the “gist of the actions” taken during that time was contractual, not tortious. Breach of contract, according to American Guarantee, does not qualify as a “Loss” under the policy, because a loss is defined as an “amount the Insured Persons become legally obligated to pay,” and a corporate officer cannot be held liable for breach of contract when acting in the scope of her employment. American Guarantee concludes that the conduct Nouveau and its officers are alleged to have engaged in during the policy period was contractual and not tortious, and therefore is not covered by the policy. While the argument is persuasive on its face, a closer look reveals serious flaws.
 

 Plaintiff encourages this Court to assess the “gist of the action[s]” alleged to have taken place during the policy period. The gist of the action test was first used by the Superior Court of Pennsylvania in
 
 Bash v. Bell Tel. Co.,
 
 411 Pa.Super. 347, 601 A.2d 825 (1992), to distinguish between tort and contract claims. The test determines from the complaint the essential nature of the claims alleged by distinguishing between contract and tort actions on the basis of source of the duties allegedly breached; if the complaint essentially alleges a breach of duties that flow from an agreement between the parties, the action is contractual in nature, whereas if the duties allegedly breached were of a type imposed on members of society as a matter of social policy, the action is essentially tort-based.
 
 See Phico Ins. Co. v. Presbyterian Medical Serv. Corp.,
 
 444 Pa.Super. 221, 229, 663 A.2d 753, 757 (1995).
 

 Plaintiff tacitly urges the Court to apply the gist of the action test in a restrictive manner and examine only the individual allegations in the underlying complaint that fall within the policy period, rather than assessing the complaint as a whole. This approach misconstrues the gist of the action test. The test is not limited to discrete incidents of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole.
 
 [12]
 
 The cases cited by plaintiff that have applied the gist of the action test in the insurance setting have looked to the totality of the action at issue, and I encountered no case
 
 *623
 
 that parsed the various factual allegations of the action in the manner suggested by plaintiff.
 
 See Phico,
 
 444 Pa.Super. at 229-30, 663 A.2d at 758 (holding that while there were individual allegations of tortious activity in the complaint, the underlying complaint as a whole sounded in contract);
 
 Toombs NJ, Inc. v. Aetna Cas. & Sur. Co.,
 
 404 Pa.Super. 471, 591 A.2d 304 (1991) (concluding that the insurance policy at issue did not provide coverage because the underlying suit was essentially one for breach of contract).
 
 [13]
 

 Applying the gist of the action test to the entire underlying complaint in this case, I conclude that the gist of the underlying action lies in tort. The core of Fojanini and Ferroni’s claim is that they were duped into spending large amounts of time and energy on Nouveau’s behalf in reliance upon representations made by the Blacks that Nouveau had its financial house in order. While the underlying complaint contains allegations that agreements were breached, the action as a whole clearly sounds in tort, as the action is grounded in the general duty to exercise reasonable care in making representations that could result in reliance. The contract allegations are merely “ ‘collateral’ to conduct that is primarily tortious,”
 
 Sunquest,
 
 40 F.Supp.2d at 651 (citing
 
 Wood & Locker, Inc. v. Doran & Assocs.,
 
 708 F.Supp. 684, 689 (W.D.Pa.1989)), and presumably were included only to demonstrate Nou-veau’s alleged disregard for honesty and good faith in business deals.
 

 Because plaintiffs argument on its second and third claims for relief is founded on the premise that the gist of the underlying action was contractual, and because I conclude that that premise is flawed, it is unnecessary to address in detail plaintiffs remaining arguments as to its second and third claims for relief.
 
 [14]
 
 I conclude that
 
 *624
 
 American Guarantee is not entitled to judgment as a matter of law on its second and third claims for relief on the grounds argued in its memorandum.
 
 [15]
 

 Ferroni and Fojanini also move for summary judgment on the second and third claims for relief. They argue that the complaint clearly alleges “Wrongful Acts” that took place within the policy period, and that the gist of the action test is inapposite. American Guarantee has, however, raised a genuine issue of material fact as to whether the conduct that took place during the policy period fell within the policy’s definition of ‘Wrongful Acts.” I conclude that a reasonable jury could find, on the basis of the September 26, 1996, letter from Fojanini and Ferroni’s attorney, that no “Wrongful Acts” took place during the policy period.
 
 [16]
 
 Therefore, Fojanini and Ferroni’s motion for summary judgment will be denied as to the second and third claims for relief.
 

 C. Demand Prior to Pending Date of Policy
 

 American Guarantee also contends that it has no coverage responsibilities in the underlying suit due to an exclusion that precludes recovery for losses
 

 based upon, arising out of, or attributable to any demand, suit, or proceeding pending ... against the Company or any Insured Person on or prior to the pending or Prior Date set forth in Item 8 of the Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein.
 

 (Motion of Plaintiff for Summary Judgment, Exhibit 1, Directors and Officers
 
 *625
 
 Liability and Reimbursement Policy, at 5). American Guarantee argues that the September 26, 1996 letter from Fojanini and Ferroni’s attorney to Chris Plunkett, an officer of Nouveau, constituted a “demand” that was made before the policy’s October 3,1996 prior or pending date.
 

 The word “demand” is not defined in the policy, and its meaning in this context is ambiguous.
 
 Blacks Lato Dictionary
 
 defines “demand” as
 

 The assertion of a legal right; a legal obligation asserted in the courts. An imperative request preferred by one person to another, under a claim of right, requiring the latter to do or yield something or to abstain from some act. Request for payment of debt or amount due. An asking with authority, claiming or challenging as due.
 

 Black’s Law Dictionary
 
 429 (6th ed.1990). Under this definition, I cannot conclude that the September 26, 1996 letter constituted a demand upon Nouveau. The letter did not directly assert a legal right or obligation, nor did it include an imperative request; it simply set forth the history of the relationship between Ferroni and Fo-janini and Nouveau, and expressed a desire to “resolv[e] the outstanding issues” between them. (Motion of Plaintiff for Summary Judgment, Exhibit A, Letter from Paul S. Haar to Chris Plunkett, Sept. 26, 1996, at 1). The “talking points” listed in the letter simply purport to set an agenda for a meeting, and drawing the inferences in favor of Ferroni and Fojanini, I cannot conclude that they constitute assertions of legal rights.
 
 [17]
 
 The letter’s reference to the fact that “litigation is always an option,” was qualified in the same sentence by a commitment to “develop[ing'J a close a productive relationship ... for many years to come,”
 
 (id.
 
 at 10), and thus did not rise to the level of a demand. Interpreting this ambiguous exclusion in favor of coverage and drawing inferences in favor of the non-moving parties, the Italian defendants, I cannot conclude as a matter of law that the letter constituted a prior demand under the exclusion cited by American Guarantee.
 
 See Madison Constr. Co. v. Harleysville Mut. Ins. Co.,
 
 557 Pa. 595, 735 A.2d 100 (1999) (citing
 
 Standard Venetian Blind Co. v. American Empire Ins. Co.,
 
 503 Pa. 300, 305, 469 A.2d 563, 566 (1983)) Therefore, plaintiffs motion for summary judgment will be denied as to the fourth claim for relief.
 

 Fojanini and Ferroni’s motion for summary judgment also will be denied as to the fourth claim for relief. Drawing all inferences in favor of the non-moving party, American Guarantee, I conclude that the September 26, 1996 letter creates a genuine issue of material fact as to whether a demand related to Fojanini and Fer-roni’s dealings with Nouveau was made prior to October 3, 1996. Whether or not the letter constituted a demand turns largely on the talking points contained in the letter; the nature and status of the agreements relied upon by Ferroni and Fojanini, the nature of the rights flowing from those agreements, and, perhaps, the intent of the Ferroni and Fojanini in citing those agreements. These are questions of
 
 *626
 
 fact that cannot be resolved at this stage, as there is little evidence on the record before me in this regard. Furthermore, the letter raises a question of whether other communications took place that may have constituted a demand.
 
 [18]
 
 Therefore, I conclude that a reasonable jury could find on the evidence before me that' a prior demand was made upon Nouveau.
 

 D. Corporate Status of Defendant Gary Black Jr.
 

 American Guarantee argues that it owes no coverage to Gary Black, Jr., because he “is not now and has not been a duly elected director or a duly elected or appointed officer of Nouveau,” (Complaint, at 1137 (paraphrasing the policy language defining “Insured Person,” Motion of Defendants for Summary Judgment, Exhibit 2, Declarations, Item 6)), and therefore was not an “Insured Person” acting in an “Insured Capacity” as defined in the policy. Defendants counter that Black Jr. was an officer of Nouveau and therefore was an “Insured Person.”
 

 In a corporate prospectus submitted by Nouveau to the Securities and Exchange Commission, Black Jr. was listed under the heading “Directors, Executive Officers and Key Consultants” as the General Manager of Vending Division and Field Services Manager. (Motion of Defendants for Summary Judgment, Exhibit 9, Securities and Exchange Commission Prospectus, Exh. 9, at 32). Black Jr. was described as having been with the company since 1990, assisting with the design and manufacturing of the pizza vending machine and handling customer relations, and was apparently held his office until at least September 1996.
 
 (Id.
 
 at 33, 34).
 
 [19]
 
 The prospectus raises a genuine issue of material fact as to whether Black Jr. was a duly elected or appointed officer of Nou-veau during the policy period, and therefore was an “Insured Person” under the policy. American Guarantee’s motion for summary judgment therefore will be denied as to its fifth claim for relief.
 

 In light of the prospectus, Fojanini and Ferroni ask the Court to grant their motion for summary judgment on American Guarantee’s fifth claim for relief. Defendants have pointed to an absence of evidence that Black Jr. was not an officer, and therefore not an “Insured Person” under the policy, and American Guarantee is required under Rule 56 of the Federal Rules of Civil Procedure to produce evidence, in the form of affidavits, depositions, or documents, from which a reasonable could find that Black Jr. was not an officer or risk an entry of summary judgment. American Guarantee has produced no such evidence, and relies only on the language of its complaint and the unsupported assertion in its memorandum that Black Jr. “now admits” that he was not an officer of Nouveau. These are insufficient bulwarks against summary judgment. Therefore, defendants’ motion for summary judgment on plaintiff’s fifth claim of relief will be granted.
 

 III. CONCLUSION
 

 This declaratory judgment action presents the Court with a variegated dish of legal and factual issues. Many of the parties’ arguments for and against summary judgment have not panned out, and now only two central issues remain: whether or not wrongful acts took place during the policy period, and whether a demand was made before the prior or pending date of the policy. Thus, this pizza case remains
 
 *627
 
 uncooked in the wake of summary judgment, and the remaining issues will be baked at trial. For the foregoing reasons, plaintiffs motion for summary judgment will be denied, and defendants’ motion for summary judgment will be granted in part and denied in part.
 

 An appropriate Order follows.
 

 ORDER
 

 AND NOW, this 14th day of March, 2000, upon consideration of the cross-motions for summary judgment of plaintiff American Guarantee and Liability Insurance Company (Document No. 22) and defendants Marco Fojanini, Armando Ferro-ni, Europe Invest, S.R.L., (Document No. 23), the parties’ responses, memoranda submitted therewith, and the evidence, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and having found for the reasons set forth in the foregoing memorandum that there are genuine issues of material fact as to three of the five claims for relief, it is hereby ORDERED that
 

 (1) the motion of plaintiff American Guarantee and Liability Company for summary judgment is DENIED as to all counts;
 

 (2) the motion of defendants Marco Fo-janini, Armando Ferroni, and Europe Invest, S.R.L., for summary judgment is GRANTED as to Counts One and Five;
 

 (3) the motion of defendants is DENIED as to Counts Two, Three, and Four.
 

 [1]
 

 . The modem pizza originated in Italy in 1889, when baker Rafaele Esposito of Naples created a dish for Italian King Umberto and Queen Margherita. Named, fittingly, the Pizza Margherita, the dish consisted of flat bread adorned with tomatoes, mozzarella cheese, and basil, each topping representing a color of the Italian flag. The first American pizzeria opened in 1905 in New York City. The pizza is not purebred Italian fare, however. The concept of flat bread with toppings stretches back many centuries to ancient Egypt, and the word pizza comes from the Greek word
 
 pitta,
 
 meaning "pitch” (presum
 
 *617
 
 ably because the sap of trees formed flat layers or cakes).
 
 See
 
 Charles Perry, "A Stone Age Snack,”
 
 The Los Angeles Times,
 
 June 20, 1991, at III. There is, alas, no evidence on the record that the pizzas in this case were slated for delivery to Greece or Egypt.
 

 [2]
 

 . According to the complaint, Black Sr. and Black Jr. also personally represented that Nouveau was sound, financially, in October 1994 and February 1995, and Fojanini and Ferroni engaged in marketing and distributing efforts on behalf of Nouveau in reliance upon those representations.
 

 [3]
 

 . The deficiencies of the Nouveau machines included a motor incompatible with European power specifications, no coin mechanism or multilingual capability, and ingredients that were not acceptable to the European palate. It is not clear from the complaint whether the aesthetic shortcomings of the pizzas were attributable to the age-old battle between thick-crusted and thin-crusted pizza.
 

 [4]
 

 . That underlying action,
 
 Fojanini v. Nouveau International,
 
 Civil Action No. 97-3188, was filed in this district and is currently before Judge Norma Shapiro. The action was placed in civil suspense in April 1998 pending the outcome of Nouveau's bankruptcy proceedings, and while the bankruptcy proceedings have apparently concluded, the underlying case has remained in suspense pending the outcome of the instant action.
 

 [5]
 

 . In fact, the policy was purchased from Zurich American Insurance Group, of which American Guarantee is the parent company. To avoid confusion, I will simply refer to the insurer in this case as American Guarantee.
 

 [6]
 

 . Defendants Nouveau International, Inc., Gary W. Black, Sr., and Gary W. Black, Jr., have filed nothing with this Court in response to the cross-motions for summary judgment.
 

 [7]
 

 . Defendants champion a different analysis, arguing that American Guarantee must prove by clear and convincing evidence that the insured. Nouveau, knowingly made false statements on the insurance application. This is the standard for complete avoidance of an insurance contract on the basis of fraudulent misrepresentation.
 
 Sea Tudor Ins. Co.
 
 v.
 
 Township of Stowe,
 
 697 A.2d 1010 (1997) (to avoid an insurance contract, an insurer must come forward with clear and convincing evidence that the insured knowingly made false statements that were material to the risk against which the insured sought to be protected);
 
 Kearns v. Philadelphia Life Ins.,
 
 401 Pa.Super. 292, 585 A.2d 53 (1991) (same). I do not. read American Guarantee’s complaint to seek the complete avoidance of the insurance contract; rather I read it merely to invoke a particular policy exclusion and
 
 *620
 
 thereby avoid coverage on a particular claim of which the insured allegedly had prior knowledge. Therefore, American Guarantee need not meet the more stringent standard for avoiding an insurance contract.
 

 [8]
 

 . I have paraphrased the famous question of former U.S. Senator Howard Baker (R Tenn.), who, during the Watergate hearings, asked, "What did Nixon know and when did he know it?" Incidentally, one of the lesser-known Watergate pranks involved Nixon operatives arranging tire delivery of 100 pizzas to a rally for George McGovern, Nixon's Democratic opponent in the 1972 presidential elections, and sticking the democratic campaign with the bill;
 
 See
 
 Gary A Warner, "Watergate: 20 Years Later,”
 
 Orange-County Register,
 
 June 17, 1992, at A6.
 

 [9]
 

 . This is a modified version of the analysis used by the Court of Appeals for the Third Circuit and numerous district courts in this circuit in considering professional liability policies with similar application questions and exclusions.
 
 See Selko v. Home Ins. Co.,
 
 139 F.3d 146, 152 (3d Cir.1998) ("First, it must be shown that the insured knew of certain facts. Second, in order to determine whether the knowledge actually possessed by the insured was sufficient to create a 'basis to believe,’ it must be determined that a reasonable lawyer in possession of such facts would have had a basis to believe that the insured had breached a professional duty.");
 
 Coregis Ins. Co. v. Baratta & Fenerty, Ltd.,
 
 57 F.Supp.2d 179 (E.D.Pa.1999);
 
 Ehrgood v. Coregis Ins. Co.,
 
 59 F.Supp.2d 438 (M.D.Pa.1998);
 
 Mt. Airy Ins. Co. v. Thomas,
 
 954 F.Supp. 1073 (W.D.Pa.1997). In
 
 Seiko,
 
 the insurance application, like the application in this case, asked whether the insured was aware of any "circumstances, acts, errors or omissions that could result in a professional liability claim against any attorney of the firm, or its predecessor."
 
 Selko,
 
 139 F.3d at 149. However, the exclusion at issue in
 
 Seiko
 
 and its progeny differed from the exclusion in this case in that it that applied to prior acts, errors or omissions that the insured "could reasonably have foreseen” or that gave the insured "a basis to believe” that a claim would arise.
 
 See, e.g., id.
 
 at 150;
 
 Baratta,
 
 57 F.Supp.2d at 181. Consequently, in
 
 Seiko,
 
 the court of appeals used a mixed objective/subjective test of knowledge that inquired into the actual facts in the possession of the insured and whether those facts would have led a reasonable person to believe a claim could arise under the policy.
 
 See Selko,
 
 139 F.3d at 152. Here, however, the policy calls for a purely subjective inquiry into the actual beliefs of Nouveau officers of directors.
 

 [10]
 

 . The pizza business has had its share of litigiousness of late. U.S. Magistrate Judge William F. Sanderson, Jr., recently ordered Papa John's to pay Pizza Hut $468,000 in damages and enjoined Papa John's from using its tag line "Better Ingredients. Better Pizza” in its adverlising.
 
 See Pizza Hut, Inc. v. Papa John's International,
 
 80 F.Supp.2d 600 (N.D.Tex.2000). Two years ago, a federal judge effectively ordered Domino’s Pizza to deliver pizzas to a low-income, predominantly African American community.
 
 See Robinson v. Power Pizza d/b/a Domino’s Pizza,
 
 993 F.Supp. 1462 (M.D.Fla.1998).
 

 [11]
 

 . Were the test to be applied here an objective one that asked whether a reasonable corporate officer or director in possession of the letter would have believed that litigation was possible, the outcome might be different. An argument could be made that any reasonable officer reading the September 26,
 
 1996,
 
 letter would have concluded at the very least that Fojanini and Ferroni might file a lawsuit. However, the test mandated by the policy is purely subjective, and I cannot conclude from the letter that any Nouveau officer or director in fact believed a lawsuit would result.
 

 [12]
 

 . "Gist” is a term of art in common law pleading that refers to "the essential ground or object of the action in point of law, without which there would be no cause of action.”
 
 Black’s Law Dictionary
 
 689 (6th ed.1990). "Action” is defined by Black’s Law Dictionary as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law----It includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court.”
 
 Id.
 
 at 28.
 

 The "gist of the action” test, then, is a general test concerned with the "essential ground,” foundation, or material part of an entire "formal complaint” or lawsuit. Plaintiffs’ restrictive application of the test to a small group of allegations contained within a complaint is therefore inconsistent with the test’s linguistic pedigree. The essential foundation of the underlying complaint in this case is the tortious conduct pled as fraud and misrepresentation; the contract allegations in the complaint are ancillary embellishments at most.
 

 [13]
 

 . The other cases cited by plaintiff are distinguishable in that every one of the cited federal cases involved complaints that directly asserted both tort and contract claims that overlapped heavily with one another.
 
 See Quorum Health Resources, Inc. v. Carbon-Schuylkill Community Hosp., Inc.,
 
 49 F.Supp.2d 430 (E.D.Pa. 1999);
 
 Sunquest Info. Sys., Inc.
 
 v.
 
 Dean Witter Reynolds, Inc.,
 
 40 F.Supp.2d 644 (W.D.Pa.1999);
 
 Lex & Smith Professional Assocs., Ltd. v. Wilmington Professional Assocs., Inc.,
 
 1999 U.S. Dist. LEXIS 7181 (E.D.Pa. May 18, 1999);
 
 Horizon Unlimited, Inc. v. Silva,
 
 No. 97-7430, 1998 WL 88391 (E.D Pa. Feb. 26, 1998);
 
 Factory Mkt., Inc. v. Schuller Int’l, Inc.,
 
 987 F.Supp. 387 (E.D.Pa. 1997);
 
 New Chemic, Inc. v. Fine Grinding Corp.,
 
 948 F.Supp. 17 (E.D.Pa.1996);
 
 C.P. Cook Coal Co., Inc. v. Browning Ferris, Inc.,
 
 No. 93-7085, 1995 WL 251341 (E.D. Pa. April 26, 1995). The complaint at issue in this case asserted only tort claims, and the discussion of contract issues are collateral to the underlying fraud and misrepre.sentation charges.
 
 Furthermore, many of
 
 the above cases relied on the integration clause of the contracts at issue in concluding that the tort claims were simply ruses to circumvent the integration clause.
 
 See, e.g., Sunquest,
 
 40 F.Supp.2d at 654. While there were contracts between the parties to the underlying suit, American Guarantee does not argue that those agreements were integrated, nor does it contend that the tort claims in the underlying complaint are contract claims in disguise.
 

 [14]
 

 . The second premise of plaintiff's argument, that contract breaches are not covered under the policy, is flawed as well. Plaintiff asks this Court to read such an exclusion into the contract, citing a case decided by the Wisconsin Court of Appeals and a treatise on corporate officer liability.
 
 See In Re Liquidation of WMBIC Indem. Corp.,
 
 175 Wis.2d 398, 499 N.W.2d 257 (Wis.App.1993); William E. Knepper and Dan A. Bailey,
 
 Liability of Corporate Officers and Directors
 
 § 25-2 at 445 (6th ed.1998). The logic offered by these sources is that extending directors and officers liability coverage to contract breaches transforms such policies into corporate liability policies by covering matters for which only the corporation can be held liable.
 

 The fact is, under Pennsylvania law corporate directors and officers
 
 can
 
 be held personally liable for contract breaches in two, possibly three circumstances. First, a court may "pierce the corporate veil” and hold corporate officers responsible for the acts of the corporation.
 
 See Lumax Indus., Inc. v. Ault-man,
 
 543 Pa. 38, 41-42, 669 A.2d 893, 895 (1995) (setting forth the criteria for proceeding under a theory of piercing the corporate veil). Second, a corporate officer also may be found liable for wrongful acts under the participation theory, when an officer personally participates in such acts.
 
 See Wicks v. Milzo-co Builders, Inc.,
 
 503 Pa. 614, 470 A.2d 86 (1983) (applying the participation theory).
 
 *624
 
 Third, "[a] corporate officer is of course liable for the breach of any promises or representations which he extends not in his capacity as an officer but personally in his individual capacity.”
 
 Loeffler v. McShane,
 
 372 Pa.Super. 442, 448 n. 3, 539 A.2d 876, 879, n. 3 (1988),
 
 aff'd,
 
 524 Pa. 330, 572 A.2d 1 (1990) (citing
 
 Village at Camelback Property Owners Ass’n v. Carr,
 
 371 Pa.Super. 452, 538 A.2d 528 (1988)).
 

 Neither party has briefed these issues and, again, it is unnecessary for the Court to resolve them at this stage, as my conclusion that the gist of the action is not contractual defeats plaintiff’s argument for summary judgment as to its second and third claims of relief. That said, this issue could arise again at trial, if American Guarantee were to directly assert that there is no evidence that a "Wrongful Act” took place during the policy period. (Inexplicably, American Guarantee has not raised this argument at summary judgment, and instead has taken the circuitous "gist of the action” route, under which it has argued that the underlying action is contractual in nature and therefore not covered under the policy. I have concluded that this route leads nowhere.) If American Guarantee were to prove that the only acts that took place during the policy period were breaches of contract, the above analysis would be necessary to resolve the issue of whether a breach of contract by Black Sr. or Black Jr. would be considered a “Wrongful Act” under the policy.
 

 [15]
 

 . The Court’s conclusion that the gist of the action test applies to the entirety of the underlying suit does not mean that plaintiff owes coverage for events that occurred outside the policy period. It merely means that plaintiff cannot escape liability based on its contention, based solely on the face of the complaint, that the gist of the underlying action is contractual. The gist of the action test is a limited inquiry that seeks to determine from the complaint alone, without any additional evidence, the nature of the action at issue. As discussed above, plaintiff may still prevail at trial on a direct theory that the conduct at issue is not covered by producing evidence that Nouveau's officers or directors committed no "Wrongful Acts” during the policy period. Such evidence could take the form of proof that no Nouveau officer perpetrated fraud or misrepresentation on Fojanini or Ferroni during the policy period, and that Nouveau merely breached contracts with Fer-roni and Fojanini during that time. However, no such evidence has been offered yet. My conclusion is therefore limited in scope, and only means that plaintiff cannot prevail at summary judgment on the basis of the gist of the underlying complaint alone.
 

 [16]
 

 . The letter is inconclusive as to when the alleged misrepresentations took place, and it is possible that the misrepresentations could have taken place prior to policy period. (Motion of Plaintiff for Summary Judgment, Exhibit A, Letter from Paul S. Haar to Chris Plunkett, Sept. 26, 1996, at 3).
 

 [17]
 

 . The “proposed talking points” include Fo-janini and Ferroni's requests for Nouveau to adhere to prior agreements, including the exclusive distributorship agreement reached in April 1996, and to "reinstate” the monthly support payments Nouveau agreed to make in April 1996. (Motion of Plaintiff for Summary Judgment, Exhibit A, Letter from Paul S. Haar to Chris Plunkett, Sept. 26, 1996, at 8-9). Couching these requests in the form of “proposed talking points” makes it difficult to construe them as demands. Moreover, the Court has insufficient information to determine whether Fojanini and Ferroni, in raising the prior agreements, were asserting enforceable legal rights, as is required in a “demand,” or merely proposing a renegotiation of informal pacts. Finally, the last talking point calls for a "long-term written agreement to memorialize the agreements entered into” by Nouveau and the Italian defendants, suggesting either that the prior "agreements” were not enforceable, or that the talking points were simply aspects of a proposal to negotiate a new contract.
 
 (Id.
 
 at 9) Regardless, there is a genuine issue of material fact here.
 

 [18]
 

 . The letter itself refers to other telephone conversations among counsel for the parties. (Motion of Plaintiff for Summary Judgment, Exhibit A, Letter from Paul S. Haar to Chris Plunkett, Sept. 26, 1996, at 1).
 

 [19]
 

 . According to the prospectus, Black Jr.’s employment contract with Nouveau was terminated in 1996, along with those of every other officer, when Nouveau “went public” with a stock offering. (Motion of Defendants for Summary Judgment, Exhibit 9, Securities and Exchange Commission Prospectus, Exh. 9, at 33-34).