William FREESTONE and Sandra
Freestone, His Wife

v.

NEW ENGLAND LOG HOMES, INC., a
Connecticut Corporation, Perform
Sealants, Inc., an Ohio Corporation,
and Sika Corporation, a New Jersey
Corporation, and Crum & Forster
Commercial Insurance

Appeal of: NORTH RIVER INSUR-
ANCE COMPANY, Incorrectly Named
Herein as Crum & Forster Commer-
cial Insurance

Superior Court of Pennsylvania.

Argued Oct. 23, 2002.

Filed Jan. 17, 2003.

Alan S. Miller, Pittsburgh, for appellant.

Meghan F. Wise, Pittsburgh, for appellees.

Before: MUSMANNO, LALLY–GREEN and KLEIN, JJ.

KLEIN, J.:

¶ 1 North River Insurance Company (North River), incorrectly named as Crum & Forster, appeals the order entered on December 6, 2001 granting judgment on the pleadings to William and Sandra Freestone (Freestone) and denying its own motion for judgment on the pleadings. We reverse and direct that judgment be entered in favor of North River.

¶ 2 Upon review of the record, relevant case law, and the submissions by the parties, we must conclude that the general liability insurance policy issued by North River does not provide coverage for the breach of contract and breach of warranty alleged by the Freestones in their underlying complaint. Further, the allegation of negligence arises from the contractual duty imposed on NELHI to provide suitable building materials. Thus, under the gist of the action doctrine, this case is properly viewed in entirety as a contract action, for which no coverage is due. Finally, even if the negligence count was taken at face value, giving improper advice cannot be construed as an accident for which coverage is required. Therefore, the trial court improperly granted judgment in their favor.

***Facts and Procedure***

¶ 3 Because the facts of this garnishment action are complex, we will begin with a condensed history of the case.

¶ 4 In April 1984, the Freestones purchased a log home kit from New England

Log Homes, Incorporated (NELHI). NELHI held a general liability insurance policy issued by North River. The Freestones originally contracted for the delivery of red pine logs, but due to a flood in Berrington, Massachusetts, the red pine logs were washed away. The Freestones had sought the red pine for both aesthetic reasons and because the red pine is less dense than other woods and so is easier to work with. NELHI offered to ship yellow pine logs instead and the Freestones accepted the replacement. The house kit was delivered in August 1984.

¶ 5 Unfortunately, the denser yellow pine logs shipped to the Freestones were not properly seasoned. This lack of seasoning meant that the logs were still internally wet. As a result, they were subject to the vicissitudes of weather, causing the logs to contract and expand. This then created gaps between the logs that allowed wind and rain to enter the Freestones, home relatively unimpeded. Understandably, this rendered the home something less than habitable as well as causing considerable damage to the Freestones' furnishings and other personal property.

¶ 6 When the Freestones complained, NELHI suggested a certain type of caulk be used to seal the home. This was attempted but proved useless. In fact, at trial, expert testimony indicated that caulking actually made the problem worse, allowing new moisture to invade the logs, leading to rot.

¶ 7 The Freestones filed suit against a number of entities, including NELHI, on October 31, 1989. NELHI notified North River of the claim, but North River declined both coverage and defense of NELHI under the terms of the policy it had issued to NELHI. The Freestones complaint contained three counts against NELHI. Count I was for breach of contract. Count II was for breach of warranty. Count III was for negligently recommending the use of caulk to repair the home. During the pendency of the litigation, NELHI went out of business. Counsel for NELHI was allowed to withdraw from representation, having not been paid.

¶ 8 The case eventually went to trial on September 28, 1995. By the time of trial in 1995, only NELHI remained as a defendant. NEHLI made no appearance at the trial and so offered no testimony. Having declined coverage and defense, no one from North River was present either. The judge took the testimony of the Freestones and their experts and found NELHI liable to the Freestones for $338,994.32 in damages. The judgment was entered upon praecipe on December 22, 1995.

¶ 9 On February 3, 2000 the Freestones filed a writ of execution seeking to garnish the insurance policy provided by North River. Interrogatories and new matter were served upon the Freestones. Eventually, both parties filed motions for judgment on the pleadings and briefs in support. Argument was heard on the motions, and on December 6, 2001, judgment was granted in favor of the Freestones and against North River. The amount of the judgment was later amended to reflect a $52,775.62 offset in favor of North River (representing the cost of the kit) and an additional $105,996.30 in interest (from October 5, 1995—the date of the original verdict) was added. Costs and attorneys fees were also awarded.

¶ 10 We note first that our scope of review in determining whether judgment on the pleadings was appropriate is plenary. *Vetter v. Fun Footwear Co.,* 447 Pa.Super. 84, 668 A.2d 529 (1995). Our standard of review is to determine whether the trial court committed a clear error of law or whether there were facts disclosed by the pleadings that should properly go to

the jury. *Kelly v. Nationwide Ins. Co.,* 414 Pa.Super. 6, 606 A.2d 470 (Pa.Super.1992).

■ ¶ 11 In determining what, if anything, a garnishee such as North River owes to a judgment creditor, such as the Freestones, we must determine the existence of a valid judgment and the insurer's obligation to the judgment debtor. *Bianco v. Concepts "100", Inc.,* 291 Pa.Super. 458, 436 A.2d 206 (1981). There is no contention here regarding the existence of a valid judgment. The salient question is one of the insurer's obligations.

¶ 12 That an insurer is only obliged to provide indemnification for those damages which are covered by the policy of insurance is obvious. For example, a home owners' insurance policy cannot be garnished to provide coverage for an automobile accident. Therefore, much like a declaratory judgment action, we must determine under what theory the plaintiff seeks to collect.

¶ 13 Here, the Freestones made three allegations against NELHI: breach of contract, breach of warranty and negligent advice. Without stating its rationale, the trial court found that under one, some, or all of those theories, NELHI owed the Freestones damages. The right to garnish the North River insurance policy, therefore, can only be derived from the right of the Freestones to collect damages. That right, in turn, is due to a breach of contract, a breach of warranty or upon negligently given advice, as alleged by the Freestones themselves.

## Breach of Contract and Breach of Warranty

■ ¶ 14 As to the breach of contract and breach of warranty claims, it is clear that Pennsylvania law does not recognize the applicability of a general liability policy to such causes of action.

The purpose and intent of [a general liability] insurance policy is to protect the insured from liability for essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking.

*Redevelopment Auth. of Cambria County v. International Ins. Co.,* 454 Pa.Super. 374, 685 A.2d 581 (1996) (*en banc*). As noted, the first two counts of the Freestones' complaint against NELHI were for a breach of contract and a breach of warranty. These are disputes between parties to a contractual undertaking, not accidental injury. Thus, under a fair reading of *Redevelopment Authority,* there can be no coverage for any claim payable under either of those theories.

## Negligence and Gist of the Action

■ ¶ 15 The final count against NELHI by the Freestones' is cast as one of negligence. Specifically, it was alleged:

The Defendant [NELHI] breached its duty of care and its duty to Plaintiffs by negligently advising the Plaintiffs to caulk the exterior of the home which has resulted in rotting of existing logs in the home.

Compl. ¶ 26. We note first that any duty of care owed to the Freestones by NELHI was contractual in nature. The Freestones had purchased a log home kit from NELHI that was not up to standard. As a result of that breach of contract and/or warranty, the Freestones sought a remedy. The remedy provided by NELHI was to advise them to caulk their home. The remedy sought by the Freestones and the putative remedy offered by NELHI was, therefore, an outgrowth of the contractual obligation of NELHI to provide a sound product. While the advice to caulk the home proved to be no advice at all, the

allegedly negligent act was, in fact, a failure to live up to a contractual agreement.

¶ 16 Similar to the reasoning in *Redevelopment Authority* where the plaintiff tried to convert a negligence claim into a contract claim, the "gist of the action" doctrine is designed to maintain the conceptual distinction between breach of contract and tort claims. *Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa.Super. 2002). As a practical matter, the doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims. *Id.* "When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the "gist" or gravamen of it sounds in contract or tort." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 806 A.2d 936 (Pa. Cmwlth.2002). "The test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole." *American Guar. and Liab. Ins. Co. v. Fojanini*, 90 F.Supp.2d 615, 622 (E.D.Pa. 2000).

¶ 17 As demonstrated above, the negligence alleged by the Freestones is actually the failure to live up to a contract. As the insurance policy in question does not cover claims made for breach of contract, under the gist of the action doctrine, this claim too must fail.

¶ 18 The trial court, in determining that North River owed coverage to the Freestones, erred in analyzing the underlying complaint as one that sounded in negligence. The trial court first looked to the language of the policy, noting the insurer was only obligated to pay "damages because of bodily injury or property damage to which this insurance applies caused by an occurrence...." The policy defined an occurrence as "an accident, including continuous or repeated exposure to conditions which result in injury or property damage neither expected or intended from the standpoint of the insured." "Accident" was not specifically defined in the policy, therefore, the trial court used a standard dictionary definition of "an event that takes place without ones foresight or expectation."

¶ 19 The court reasoned that the continued exposure to the weather was an "occurrence" as defined in the policy. Additionally, the trial court determined the weather exposure fit the definition of an "accident." However much the trial court sought to fit the facts of the case into the terms of the insurance policy, it remains that so-called negligence count of the Freestone complaint is actually for breach of contract. This fact renders the rationale of the trial court moot.

¶ 20 Paragraph 26 of the complaint, as noted above, charges that NELHI was negligent in "advising the plaintiff's to caulk the exterior" of their home. Even if we accepted the trial court's rationale that the warping and shrinking of the logs was an "accident", we cannot ignore the fact the only allegation of negligence specifically levied against NELHI was for providing poor advice. There are no facts revealed in the record that would allow for the rendering of advice to be construed as either an "accident" or an "occurrence" so as to require coverage. By analogy, if one's house plumbing springs a leak, this could be considered an accident. If the plumber then advises to plug the leak with chewing gum until he arrives, and the leak continues, this is not an accident. The accident occurred when the leak appeared. While the advice may be undoubtedly ill advised, and may have lead to further damage, it cannot be considered an "accident".

¶ 21 Order reversed. Judgment to be entered in favor of North River Insurance Company.