**PENNSYLVANIA MANUFACTURERS'
ASSOCIATION INSURANCE
COMPANY, Appellant,**

v.

**L.B. SMITH, INC., Environmental
& Recycling Services, Inc.,
CMI Corp.**

Superior Court of Pennsylvania.

Argued May 14, 2003.
Filed Aug. 28, 2003.

Kathleen D. Wilkinson, Philadelphia, for appellant.

Charles T. Young, Harrisburg, for L.B. Smith, appellee.

BEFORE: STEVENS, LALLY–GREEN and KLEIN, JJ.

OPINION BY KLEIN, J.:

¶ 1 Pennsylvania Manufacturers' Association Insurance Company (PMA) appeals from an order entered on September 24, 2002, granting summary judgment to L.B. Smith, Inc. (LBS), and denying its own cross-motion for summary judgment. We reverse and direct that judgment be entered in favor of PMA.

¶ 2 LBS sold two Trashmaster industrial trash compactors to Environmental & Recycling Services, Inc. (Environmental). Both Trashmaster compactors failed to operate properly despite repeated attempts to fix the machinery. Environmental filed a lawsuit against LBS, the distributor, and CMI Corporation (CMI), the manufacturer, alleging breach of contract, breach of warranty, and negligence. LBS presented the claim to its insurer, PMA, which disclaimed coverage. This declaratory judgment action followed.

¶ 3 We conclude that the general liability insurance policy issued by PMA does not provide coverage for the breach of contract and breach of warranty alleged by Environmental in its underlying complaint. Further, the allegation of negligence arises from the contractual duty imposed on LBS to provide working Trashmasters. Thus, under the "gist of the action" doctrine, this case is properly viewed in its entirety as a contract action, for which no coverage is due. Finally, even if the negligence count were taken at face value, failure to repair or replace a defective Trashmaster cannot be construed as an accident for which coverage is required. Therefore, the trial court improperly granted judgment in favor of LBS.

### Facts and Procedure

¶ 4 Environmental operates a landfill that disposes of construction materials. LBS is a retail merchant and service company dealing in heavy equipment such as trash compactors. CMI is a manufacturer of such equipment. On September 16, 1998, LBS and CMI delivered the Trashmaster compactor, serial No. 497, to Environmental. LBS and CMI made representations that the Trashmaster would compact construction debris and trash to be landfilled by Environmental. Environmental reported repeated mechanical problems with No. 497 after about 119 hours of use. LBS and CMI both attempted to repair the problems on numerous occasions, but were unsuccessful. In spite of the problems with the first Trashmaster, Environmental agreed to purchase another Trashmaster compactor, serial No. 500, which LBS and CMI delivered on or about December 4, 1998. Soon thereafter, No. 500 began malfunctioning and experiencing mechanical problems that also could not be fixed.

¶ 5 On September 25, 2000, Environmental filed suit against CMI and LBS in the Court of Common Pleas of Lackawanna County alleging breach of warranty, breach of contract, and negligence. LBS filed an answer, new matter, and counterclaim that included a request for declaratory judgment. The trial court granted LBS' motion for summary judgment holding that: (1) there was an occurrence because the alleged accident was not expected; (2) there was a loss of use of tangible property; and (3) implied warranties arose by operation of law rather than under the contract. PMA appeals from an order granting judgment in favor of LBS and requiring it to defend LBS.

### Breach of Contract and Breach of Warranty

■ ¶ 6 Pennsylvania law does not recognize the applicability of a general liability policy to breach of contract and breach of warranty claims. The purpose and intent of a general liability insurance policy is to protect the insured from liability for essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking. *Redevelopment Auth. of Cambria County v. Int'l Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581 (1996) (*en banc*). The first two counts of Environmental's complaint against LBS were for a breach of contract and a breach of warranty. These are disputes between parties to a contractual undertaking, not accidental injury. Thus, under *Redevelopment Authority*, there can be no coverage for any claim payable under either of those theories.

■ ¶ 7 Exclusion (b) of LBS' general liability policy specifically disallows coverage when underlying claims from property damage arise out of the failure to perform under a contract. *Ins. Policy at Sec.1 Cov.A.2.(b)*. In *Freestone v. New England Log Homes, Inc.*, 819 A.2d 550 (Pa.Super.2003), this court precluded liability under a general liability insurance policy for breach of warranty and breach of contract claims. The Freestones purchased a defective log home kit from New England Log Homes (New England). The defective logs rendered the house uninhabitable and caused considerable damage to the Freestones' furnishings and other personal property. The problem became worse when the Freestones complained and then followed New England's suggested remedy. The Freestones filed suit against a number of entities including New England. North River, New England's insurer, declined both coverage and defense of New

England under the terms of its policy. The Court found that these were disputes between parties to a contractual undertaking, not accidental injury, and held that there was no converge under the general liability insurance policy for any claim payable under either breach of contract or breach of warranty. *Id.* at 553.

¶ 8 In originally determining that LBS owed coverage to PMA, the trial court mistakenly relied on *Daily Express, Inc. v. Northern Neck Transfer Corp.*, 490 F.Supp. 1304 (M.D.Pa.1980), and *Federal Insurance Company v. General Machine Corporation*, 699 F.Supp. 490 (E.D.Pa. 1988), which are both non-binding Federal District Court cases. We note initially that we need not examine other jurisdictions on this issue, as the Pennsylvania Superior Court has recently reached the present issue in *Freestone*, which is factually analogous to the present case. Furthermore, both *General Machine* and *Daily Express* are distinguishable from the present case. Specifically, the exclusions in the insurance policy between the parties in *General Machine* are ambiguous, and the parties in *Daily Express* had liability outside of the express indemnity clause in the underlying contract.

¶ 9 *General Machine* is distinguishable because in the present case LBS does not claim ambiguity in its policy with PMA. In fact, exclusion (b) clearly precludes contractual liability. *Ins. Policy at Sec. 1, Cov.A.2. (b)*. In *General Machine*, General Machine Corporation (General) brought a declaratory judgment action against Federal Insurance Company (Federal) seeking reimbursement for payment to an insured for property damage in an underlying dispute. Coverage was afforded General partly because the exclusionary provisions were contradictory and ambiguous. *General Machine*, 699 F.Supp. at

495–496. Exclusion (b) in LBS' general liability policy is not ambiguous.

¶ 10 *Daily Express* is distinguishable because in the present case LBS had no liability to Environmental except for that which arose out of the underlying contract to provide working Trashmasters. In *Daily Express*, Daily Express, Inc. (Daily) entered into a "trip lease" agreement with Northern Neck Transfer Corporation (Northern). Under the terms of the lease Northern leased a truck and a driver to Daily. Daily brought an action against Northern seeking reimbursement of sums paid to settle the claims of third parties injured in an accident. Northern brought a third-party claim against its liability insurer. The Court found Northern's liability to Daily existed without the express indemnity clause in the "trip lease," and that Northern's liability insurance, which excluded liability coverage under any contract or agreement, did not preclude liability of Northern's insurer. However, where an insured's liability would not exist except for the express contract, the contractual liability clause relieves the insurer of liability. *Daily Express*, 490 F.Supp. at 1308. LBS' had no liability to Environmental except that which arose out of their contract to deliver Trashmasters, therefore, exclusion (b) relieves PMA of liability.

### Negligence and Gist of the Action

■▬▬ ¶ 11 Now turning to LBS' negligence claims. Under the "gist of the action" doctrine, Environmental's negligence claims are actually assertions of breach of contract and breach of warranty claims. The "gist of the action" doctrine is designed to maintain the conceptual distinction between breach of contract and tort claims. *Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa.Super.2002). As a practical matter, the doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims. *Id.* "When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 806 A.2d 936 (Pa.Cmwlth.2002). "The test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole." *American Guar. And Liab. Ins. Co. v. Fojanini*, 90 F.Supp.2d 615, 622 (E.D.Pa.2000).

▬▬ ¶ 12 In the present case the underlying causes of the alleged "occurrence" were mechanical problems and product defects of the Trashmasters. Environmental charges that LBS and CMI were negligent in the repair and/or replacement of the Trashmasters. LBS seeks coverage for lost profits as a result of loss of use of air space and not for costs as a result of the failed attempts at repairing the Trashmasters. Negligence in repairing the Trashmasters did not cause the original defect and mechanical problems. The breach of contract and negligence claim arose from contractual obligations undertaken by LBS in relation to the sale and subsequent attempts to repair the Trashmasters.

¶ 13 PMA appropriately characterizes this action as contractual in nature. PMA acknowledges the underlying negligence claim by Environmental; nevertheless, their amended declaratory judgment complaint treats Environmental's negligence allegations as contractual obligations undertaken by LBS in its attempt to repair the Trashmasters. PMA argues that the mere use of the term negligence or language connoting negligence is insufficient to alter the true nature of the allegations. (Appellant's Brief at 34). Any negligence alleged in the failure to repair the Trash-

 

masters is therefore not covered by the general liability policy issued by PMA because the responsibility to repair the machinery arises solely from the contractual duty of insured, LBS, to provide working machinery and/or repair such machinery as needed.[1]

¶ 14 In *Freestone,* New England contracted to deliver yellow pine logs. These logs turned out to be defective. The remedy sought by the Freestones and the putative remedy offered by New England was an outgrowth of the contractual obligation of New England to provide a sound product. The allegedly negligent act was, in fact, a failure to live up to a contractual agreement. In the present case Environmental purchased defective Trashmaster's from LBS with mechanical problems. As a result of the contract and/or warranty, Environmental sought a remedy. The remedy provided by LBS and CMI was to attempt to repair the Trashmaster. The remedy sought by Environmental and the putative remedy offered by LBS and CMI was, therefore, an outgrowth of the contractual obligation of LBS and CMI to provide a sound product. While the attempted repairs were unsuccessful, the allegedly negligent act was, in fact, a failure to live up to a contractual agreement.

¶ 15 As demonstrated above, the negligence alleged by Environmental is actually the failure to live up to a contract. Under the "gist of the action" doctrine, the claims against PMA must fail because the insurance policy in question does not cover breach of contract or breach of warranty claims.

¶ 16 Order reversed. Case remanded for entry of judgment in favor of Pennsylvania Manufacturers' Association Insurance Company. Jurisdiction relinquished.

¶ 17 STEVENS, J., notes his dissent.

---

1.  Even if we accept the underlying allegation of negligence on its face, and find that loss of air space is a compensable damage, exclusion (m) of the insurance policy between PMA and LBS seemingly precludes coverage for damage to property not physically injured arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work." *Ins. Policy at Sec. 1 Cov.A.2(m).* As pled, however, Environmental's claim for loss of "air space" arises out of defects, deficiencies and inadequacies of the Trashmasters it purchased from LBS and CMI. Therefore, this action arises out of the contractual obligation LBS has to Environmental to deliver working Trashmasters.