J-A17021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHHAYA MANAGEMENT, LLC C/O NEHAL DESAI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1285 EDA 2019 |
| CIGAR WALA, LLC; CIGAR WALA NEWS STAND, LLC; CHESTNUT 733 ASSOCIATES, LP; THE GOLDENBERG GROUP, INC.; GOLDENBERG MANAGEMENT, INC.; MAULIKKUMAR SHAH; KAMAL PATEL; AND DHANJI DESAI | : | |

Appeal from the Judgment Entered December 10, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): No. 150600691

BEFORE:  BOWES, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McCAFFERY, J.:          **FILED OCTOBER 14, 2020**

Chhaya Management, LLC c/o Nehal Desai (Chhaya) appeals from the judgment entered in the Philadelphia Court of Common Pleas, Civil Division (Commerce Court), after a bench trial on Chhaya's breach of contract claim. On appeal, Chhaya claims the trial court erred in denying its tort claims on summary judgment, denying corporate veil-piercing, and denial of pre-judgment interest.  For the reasons below, we largely affirm the judgment, but vacate and remand for correction of an error the trial court identifies in its opinion.

The trial court summarized the facts in a 2017 summary judgment opinion as follows:

[Chhaya] brings this action alleging breach of contract, unlawful eviction, conversion, conspiracy and aiding and abetting tortious conduct against numerous defendants. [Chhaya] had contracted with Cigar Wala, LLC ("Cigar Wala"), the owner of a business called The Smoke Shop[,] to manage its store at 87 South 8th Street in exchange for consideration [as] described in a Management Agreement. The dispute is primarily over terms of the Management Agreement.

The Smoke Shop is located within a multi-store property group at 725-735 Chestnut Street owned by Defendant [Chestnut 733 Associates, LP ("733 Associates")]. Cigar Wala is a tenant of [733 Associates]. Defendant Goldenberg Management Inc. [(GMI)[1]] was hired by [733 Associates] to manage the entire property group and its stores, including the Smoke Shop. Among [GMI's] responsibilities were tenant relations with Cigar Wala.

\* \* \*

**Background**

The real property located at 727-35 Chestnut Street consists of a number of ground level store fronts facing 8th [ ] and Chestnut Streets, and they are leased. When [733 Associates] took ownership of 727-35 Chestnut Street, the company became successor in interest to existing leases there. One of these was a five year lease for the Smoke Shop. Cigar Wala was the named lessee and the lease term had begun on May 1, 2010. The lease was executed [ ] on behalf of Cigar Wala by . . . Dhanji Desai [ ].

---

[1] Appellees Chestnut 733 Associates, L.P. (733 Associates) and Goldenberg Management, Inc. (GMI) (collectively, Goldenberg Appellees) filed a joint brief in this matter. Goldenberg Appellees' Brief, cover. No other appellee brief was filed. In it, they explain that Chhaya initially filed suit against 733 Associates and The Goldenberg Group, Inc. (TGG), but subsequently learned that TGG is not involved in this dispute. TGG was dismissed by consent and GMI was added when Chhaya filed its Amended Complaint. **See** Amended Complaint, 4/1/16, at 1 (naming GMI); Stipulation of Counsel to Dismiss All Claims Against Defendant [TGG] Only, With Prejudice, 6/27/16, at 1-2.

When he signed this lease, Cigar Wala was owned by him. Later, [he] sold 50% of Cigar Wala to Kamal Patel ("Patel") and 25% to Malik Shah ("Shah").

In May 2012, Dhanji Desai ousted Shah and Patel from operating Cigar Wala and attempted to seize legal control of the Smoke Shop. Shah and Patel responded by filing suit against Dhanji Desai in a case captioned **Shah and Patel v. Desai, et. al.**, CP Phila 1207-2814. Dhanji Desai raised claims for breach of contract, breach of fiduciary duty, and conversion. In September 2012, Patel and Shah filed a petition for preliminary injunction against Dhanji Desai and on September 17, 2012, an Order signed by the late Honorable Albert J. Snite was entered by agreement of the parties, which read in part:

> (2) Defendants [Dhanji Desai] shall not sell any interest in [Cigar Wala] or the 8th Street Smoke Shop located at 87 S. 8th Street, Philadelphia, Pa. 19106 during the pendency of the litigation without court approval.

On March 14, 2014, a nonjury Commerce Court trial took place before the Honorable Pamela Pryor Dembe. On June 18, 2014, Judge Dembe entered a finding in favor of Patel and Shah. In pertinent part, the Court found:

> "Plaintiff Shah remains a 25% owner of [Cigar Wala] while Plaintiff Patel remains 50% owner of [Cigar Wala]. Plaintiffs are therefore entitled to entry into the business and to have full access to all accounts, books and records of the business."

Additional Defendant Dhanji Desai today continues to own 25% of [Cigar Wala].

**Management Agreement**

On March 27, 2014, after trial in **Patel and Shah v. Desai**, but before Judge Dembe entered her findings, Cigar Wala entered into a written Management Agreement with [Chhaya]. The Management Agreement is a contract . . . with terms governing [Chhaya's] duty to provide managerial assistance to Cigar Wala in the operation of the Smoke Shop in exchange for consideration. Among the duties was management and operation of a state

lottery machine. Cigar Wala promised [Chhaya] all Smoke Shop monthly profits above the first $3,000. The contract may be ambiguous, however. An example is the following at Section 4:

> "ANNUAL COMPENSATION. In consideration for the services to be provided hereunder, MANAGER shall retain **all profits** of the Smoke Shop after paying OWNER $3000.00 per month (herein after "Management Fee") no later than Monday of each month. MANAGER and OWNER shall equally split **all profits** in excess of $100,000 each calendar year from the lottery only. MANAGER shall pay all expenses associated with the operation of the Smoke Shop including taxes, insurance, lottery liability, city, state and federal taxes." ([Emphasis] added).

Also potentially unclear is the contract's meaning for the phrase "all profits." Did the parties intend that all profits including from Lottery sales be included, or did they mean "all profits" as generated from store inventory?

Another potential ambiguity relates to the Management Agreement's use of the word "inventory" itself at Paragraph 10:

> "OWNER AND MANAGER hereby agree that the inventory has been paid for in full by MANAGER and no balance exists to OWNER. Upon termination or completion of this contract, OWNER and MANAGER agree to perform an inventory at which time OWNER shall reimburse MANAGER the wholesale cost for the inventory on hand, [handwritten text] including dead inventory."

Without a schedule, at least in general terms, to explain what types of goods are meant by "inventory" or "dead inventory", a dispute seems to have taken place.

Dhanji Desai signed the Management Agreement on behalf of Cigar Wala as President. His authority to sign is challenged in this lawsuit by [Chhaya] whose owner[,] Nehal Desai[,] signed the Management Agreement. Cigar Wala has not joined Nehal Desai individually as an additional defendant and has not challenged Nehal's authority to bind Chhaya Management . . . .

**Municipal Court Action**

In July 2014, defendants [733 Associates] and [GMI] filed a landlord/tenant complaint in Municipal Court against Cigar Wala. They alleged that Cigar Wala failed to pay rent for the Smoke Shop. (This lawsuit was filed before Judge Dembe had entered her order determining Cigar Wala's ownership). On September 8, 2014, a Municipal Court judge entered judgment in favor of [733 Associates] and [GMI], granting possession and money. Cigar Wala appealed on October 4, 2014 to Common Pleas Court, but before adjudication here, [733 Associates] learned that defendants Shah and Patel were in dispute with Dhanji Desai over ownership and control of Cigar Wala.

This was the problem decided by Judge Dembe in ***Patel and Shah v. Desai et al.*** After her final order, [733 Associates] and [GMI] began negotiating with Shah and Patel, who [ ] now owned and controlled Cigar Wala. Shah, Patel and [733 Associates] went on to execute a new five year lease for the Smoke Shop — with a five year option to renew. This new lease started on May 1, 2015 and the three parties also signed a "Separate Agreement" whose purpose was to end all remaining disputes between [733 Associates] and Cigar Wala under the previous Lease. At the time the Separate Agreement was signed, the Court of Common Pleas had not heard the *de novo* landlord-tenant appeal from the Municipal Court.

The Separate Agreement contained the following representations and warranties: Shah and Patel are the controlling members of Cigar Wala with Patel owning 50%, Shah owning 25%, and Dhanji Desai owning 25%. A term of the Separate Agreement states the signatures of Patel and Shah are sufficient to bind Cigar Wala to the new Lease with [733 Associates]. Dhanji Desai was not a signor of the Separate Agreement or the new Lease.

After execution of the new Lease and the Separate Agreement, the *de novo* appeal from the Municipal Court was discontinued by Patel and Shah on behalf of Cigar Wala. Then, on June 15, 2015, with the consent of [733 Associates] but not Dhanji Desai's, Cigar Wala assigned the new Lease to a new entity, defendant Cigar Wala News Stand, LLC ("Cigar Wala News Stand").

**Changing of the Locks**

On May 11, 2015, before the Lease assignment, Patel, Shah, and the representatives of [733 Associates] and [GMI] went to the Smoke Shop and authorized a locksmith to change the store's door locks. Dhanji Desai was present at the time. The effect was to lock-out Dhanji Desai, throw him out of the Smoke Shop and discontinue his ability to operate the Smoke Shop and its lottery machine.

When this lock-out occurred, both Patel and Shah were beginning to negotiate a new management agreement with [Chhaya,] who ultimately declined and works today under the original Management Agreement dated March 27, 2014. While negotiating, Patel and Shah may have [reached an agreement] relating to inventory accounting under Paragraph 10 of the Management Agreement but in any event, there remains no agreement between [Chhaya] and Cigar Wala on inventory value.

When the May 11, 2015 lock-change happened, a [Chhaya] representative, apparently not Nehal Desai himself, allegedly removed a few cigarette cartons from the store without Dhanji Desai's permission. Patel, Shah, [733 Associates] and [GMI] later hired a professional appraisal service which has allegedly valued the Smoke Shop's inventory as of May 12, 2015.

**Procedural History**

On June 4, 2015, [Chhaya] filed this Complaint which included an action for injunctive relief[, against Cigar Wala, LLC; Cigar Wala News Stand; 733 Associates; The Goldenberg Group, Inc. (TGG); TGG was dismissed by consent and Goldenberg Management, Inc. (GMI) was substituted; *see* n. 1]. [Chhaya] also claimed legal actions for breach of contract, unlawful eviction, conversion, civil conspiracy and aiding and abetting tortious conduct. [Chhaya] later filed a separate petition for temporary restraining order and preliminary injunction.

On June 19, 2015, the petition for temporary restraining order and preliminary injunction was denied. In July, 2016 default judgments were entered against Cigar Wala defendants but these judgments were later reopened. On March 16, 2016, [Chhaya] was permitted to join Dhanji Desai as an additional defendant; an Amended Complaint was filed.

Trial Ct. Op., 5/25/17, at 1-7 (trial court footnotes and references to the record omitted; footnote added).

The following relevant facts are from the trial court's opinion on appeal:

The Commerce Court of Philadelphia has been engaged since 2012 in adjudicating a series of contentious business disputes over a small tobacco store near 8th and Chestnut [Streets] in Philadelphia called the Chestnut Smoke Shop. This is the second time a judgment has been entered by the Commerce Court involving this store.

[Chhaya] is now appealing an award in its favor following a breach of contract by [Appellee Cigar Wala]. [Chhaya] claims we erred in deciding [its] summary judgment motion by applying the gist of the action doctrine and dismissing its tort claims. Our reasons are explained in detail in an Order and memorandum Opinion dated May 25, 2017 . . . .

Following a bench trial, we found . . . Cigar Wala liable for breaching the terms of its Management Agreement with . . . [Chhaya. Chhaya], however, did not produce evidence to pierce the corporate veil of [Appellees Shah and Patel] . . . who are the majority owners of Cigar Wala. This is not because fraudulent conduct was absent within Cigar Wala, but because neither [ ] Shah nor [ ] Patel was involved. The sole fraudulent individual owner of Cigar Wala is former additional defendant Dhanji Desai, but [Chhaya's] complaints did not name him as a party.

[Chhaya] is also appealing our decision to dismiss defendants [GMI] and 733 Associates, the corporate landlord of the Chestnut Smoke Shop. [GMI] was not a party to the Management Agreement at the heart of this case . . . .

An arithmetical error in our calculation of the amount of damages needs to be corrected. We are requesting a remand to enter an amended judgment or alternatively, we are requesting the Court enter a final judgment with the correct amount.

**Facts**

- 7 -

In 2014, the Honorable Pamela Pryor Dembe of this Commerce Court was assigned an ownership dispute concerning Cigar Wala. The case was captioned ***Kamal Patel and Maulik Shah v. Desai Dhanji and Akash Investment, LLC*** (Phila. No. 120702814). On June 18, 2014, Judge Dembe entered declaratory judgment awarding Kamal Patel 50% ownership of Cigar Wala, 25% to [ ] Shah and 25% to Dhanji Desai.

Several weeks before this Judgment, Dhanji Desai had, on his own, signed the Management Agreement binding Cigar Wala to a contract with [Chhaya]. This Management Agreement gave [Chhaya's] owner, Nehal Desai, broad authority and responsibility to operate the Chestnut Smoke Shop for five years. The contract contains many terms including how compensation is to be paid to [Chhaya] by Cigar Wala and instructions on how to calculate damages in the event of breach. We found Dhanji Desai had apparent authority to bind the Cigar Wala corporation at the time the Management Agreement was executed.

Within a year, Cigar Wala terminated the Management Agreement for reasons explained in detail [ ] at Exhibit A. Our Findings and Conclusions also explain why Dhanji Desai had apparent authority to bind Cigar Wala.

[Chhaya's] evidence proved Cigar Wala's termination of the Management Agreement with [Chhaya] was a breach of contract. Evidence also showed that Dhanji Desai had misappropriated Chestnut Smoke Shop revenues without the knowledge of either [ ] Shah, [ ] Patel or [Chhaya's] Nehal Desai. Much of the skimmed money was cash from Pennsylvania State Lottery sales but Dhanji Desai also mishandled cash proceeds from the sale of tobacco and candy products. Ultimately, Dhanji Desai's fraud caused Cigar Wala to fall behind in rent and landlord [GMI] filed an eviction action in Philadelphia's Municipal Court in July 2014.

Unfortunately for them, [ ] Shah and [ ] Patel discovered the extent of Dhanji Desai's fraud only after Judge Dembe's decision awarding them majority ownership of Cigar Wala. Not only was Cigar Wala behind on rent but it had also defaulted on monies owed to the Pennsylvania Lottery.

We found both defaults were due to the sole malfeasance of Dhanji Desai.

For the next year through the middle of 2015, [ ] Shah and [ ] Patel tried to restore good standing with [GMI] and the Pennsylvania Lottery but were unable to regain actual day to day control of the store or its finances. Through May 2015, [Chhaya] was operating the store under Dhanji Desai's sole supervision. Eventually, [ ] Shah and [ ] Patel exercised their legal majority control of Cigar Wala to settle [GMI's] eviction action. They achieved this by paying off the back rent through a new company they formed called Cigar Wala New[s] Stand, LLC ("Cigar Wala New[s] Stand"). Defendant Cigar Wala News Stand signed a new lease with [GMI] for the 8th [Street] and Chestnut [Street] store. In addition to restoring the Chestnut Smoke Shop's good standing with [GMI], Cigar Wala News Stand cured the default with the Pennsylvania State lottery, doing so through new capital investment from its owners.

This process was not seamless because the changeover included Cigar Wala's breach of its Management Agreement with [Chhaya]. This took place on May 11, 2015 when [ ] Shah and [ ] Patel entered the store with a representative of [GMI] and demanded that Nehal Desai relinquish his operation of the store and summarily vacate the premises. The store's door lock was changed and Nehal Desai left the store after loading his car with some of the store's tobacco and candy inventory. Over the next several days, [ ] Shah, [ ] Patel and [GMI] completed paperwork executing a new lease with Cigar Wala News Stand, and the Chestnut Smoke Shop has been operating under its new management ever since.

[Chhaya] filed this lawsuit demanding lost profits and the balance of inventory value. Its contractual claim was that its Management Agreement with Cigar Wala had been improperly terminated. At summary judgment, landlord defendant [GMI] was dismissed because [it] was not a party to the Management Agreement.

In pleadings filed by defendants' former attorney . . . Dhanji Desai was brought into the case on fraud claims through joinder complaint. But in pretrial proceedings shortly before trial, defendants, now appearing *pro se*, withdrew all actions against Dhanji Desai. He was dismissed from the case before trial began.

**Relevant Procedural History**

- 9 -

[Chhaya's] original complaint averred the following: Count I, injunctive relief; Count II, breach of contract; Count III, unlawful eviction; Count IV, conversion; Count V, civil conspiracy; Count VI, aiding and abetting tortious conduct.

By stipulation on March 16, 2016, [Chhaya] filed an amended complaint to remove [TGG], and substitute [GMI]. Thereafter, all defendants filed answers.

On May 6, 2016, [GMI] filed a summary judgment motion which was followed a month later on June 10, 2016 by defendants' joinder complaint against Dhanji Desai. Service of process was successful but Dhanji Desai never filed an answer. Defendants never moved for default judgment and Dhanji Desai remained in the case until he was discontinued shortly before trial.

On July 22, 2016, [Chhaya] filed a summary judgment motion against defendants Cigar Wala, Cigar Wala News Stand, [ ] Shah and [ ] Patel. Cigar Wala, Cigar Wala News Stand, [Shah] and [ ] Patel filed summary judgment motions of their own against [Chhaya].

At summary judgment, we dismissed [Chhaya's] actions against [GMI] and its subsidiary [733 Associates]. We also dismissed [Chhaya's] tort actions against all the remaining defendants. Trial was permitted on contractual breach of the Management Agreement.

At pretrial conference in which all remaining defendants were unrepresented, a bench trial was scheduled.

A first bench trial resulted in a mistrial on August 16, 2018. A second bench trial took place on November 5, 2018 and November 6, 2018.

Findings of Fact and Conclusions of Law were entered on December 10, 2018 in favor of [Chhaya] and against Cigar Wala in the amount of $667,116. There was no finding of liability against [ ] Shah, [ ] Patel, or Cigar Wala News Stand.

After trial, [Chhaya] filed motions for post-trial relief on December 17, 2018. [Chhaya] filed a Notice of Appeal on January 9, 2019 which was docketed at 259 EDA 201[9]. The appeal was quashed with leave for [Chhaya] to file a new notice of appeal after

entry of judgment. This court denied post-trial motions without an opinion and entered judgment on April 1, 2019.

Trial Ct. Op., 1/27/20, at 1-6 (footnotes and references to the record omitted).

The trial court did not order a statement per Pa.R.A.P. 1925(b), as Chhaya detailed its claims in its notice of appeal.

Chhaya raises the following issues on appeal:

1. Did the Trial Court err when it granted summary judgment and dismissed all the claims against defendants [733 Associates] and [GMI] when it: (1) disregarded an affidavit which created a genuine issue of material fact regarding whether [Chhaya] enjoyed a possessory right to occupy the Chestnut Street Smoke Shop; and (2) determined that [Chhaya's] conversion claim failed solely because defendants [733 Associates] and [GMI] never "[owned] the Smoke Shop's inventory" and therefore could not have converted it?

2. Did the Trial Court err when it granted summary judgment, in part, in favor of defendants [Cigar Wala], Cigar Wala News Stand, [ ] Shah, and [ ] Patel and dismissed [Chhaya's] causes of action for unlawful eviction, conversion, conspiracy, and aiding and abetting on the basis of being barred by the gist of the action doctrine when: (1) the Trial Court improperly raised the gist of the action *sua sponte* and (2) the Trial Court's rationale for applying the gist of the action doctrine was contradicted by defendants' challenge as to the validity of a Management Agreement?

3. Did the Trial Court err when it declined to pierce the corporate veil of [Cigar Wala] and find defendants Cigar Wala News Stand, [ ] Shah, and [ ] Patel liable as alter-egos, or individually when: (1) the record supported that [Cigar Wala] was undercapitalized and was non-operational; (2) the cause of the breach of contract was based on the actions of the individual defendants; and (3) when Cigar Wala News Stand [ ] was substantially a continuance of [Cigar Wala]?

4. Did the Trial Court err when it mistakenly failed to award $59,947.92 for outstanding inventory owed to [Chhaya] and failed to award pre-judgment interest on the breach of contract claim?

- 11 -

Chhaya's Brief at 6-7.

Initially, we note that the trial court has recognized that remand is appropriate for correction of an arithmetical error. Trial Ct. Op., 1/27/20, at 8. This renders the "failure to award" portion of Chhaya's fourth question moot, as the trial court would add the contested amount to its award on remand. All that remains of that question is the issue of pre-judgment interest. We analyze each of Chhaya's claims *seriatim*.

Chhaya argues that the trial court erred in determining that the Goldenberg Appellees[2] could not have unlawfully evicted Chhaya or converted its property because Chhaya did not enjoy a possessory interest in the shop and the Goldenberg Appellees never actually owned shop inventory. Chhaya's Brief at 36-38. Chhaya says that its affidavit of Dhanji Desai provided that Chhaya enjoyed a right of possession to the shop, and the Goldenberg Appellees may have been involved in the lockout. **Id.** On this basis, Chhaya claims that summary judgment was improper.

Goldenberg Appellees argue that Chhaya was a mere contractor, and any right of occupation it had was incidental to its duties under the Management Agreement. Goldenberg Appellees' Brief at 19-21. As Chhaya had no interest in the leasehold itself, the trial court properly granted summary judgment. **Id.** One who has no tenancy cannot be evicted, and one who has no right of

---

[2] GMI and 733 Associates.

dominion or control over an object cannot suffer conversion by its loss. *Id.* at 21-23. Because the necessary relationship was not established, Goldenberg Appellees cannot have committed a tortious act under these theories, and thus accusations of "conspiracy" and "aiding and abetting" in the commission of torts cannot prevail. *Id.* at 23-24.

The trial court concludes that Chhaya was not a tenant and therefore its removal could not have been an unlawful eviction. Trial Ct. Op., 1/27/20, at 7. Further, Chhaya did not prove that any property was taken other than inventory governed by the Management Agreement. *Id.* at 8. Thus, the gist of the action doctrine applies and the analysis must be for breach rather than conversion. *Id.*

Chhaya challenges decisions made at summary judgment and after the bench trial.

> The question of whether summary judgment is warranted is one of law, and thus our standard of review is *de novo* and our scope of review is plenary. Summary judgment may be entered only where the record demonstrates that there remain no genuine issues of material fact, and it is apparent that the moving party is entitled to judgment as a matter of law.

***City of Philadelphia v. Cumberland County Bd. of Assessment Appeals***, 81 A.3d 24, 44 (Pa. 2013) (citation omitted).

> Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law . . . . We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the

outcome of the trial . . . . It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Hollock v. Erie Insurance Exchange*, 842 A.2d 409, 413–14 (Pa. Super. 2004) (*en banc*) (quotation marks and citations omitted).

Chhaya's summary judgment arguments pertain to its claims of conversion and wrongful eviction. The trial court concluded that Chhaya was not a tenant and therefore could not be evicted; likewise, because Chhaya did not establish a possessory interest in any property that was arguably converted except inventory that would be covered by the Management Agreement. The trial court also reasoned that the gist of the action doctrine barred Chhaya's tort claims.

The gist of the action doctrine acts to foreclose tort claims 1) arising solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Reardon v. Allegheny College*, 926 A.2d 477, 486 (Pa. Super. 2007). The primary distinction is that breach of contract claims arise from duties that the parties have imposed on themselves by mutual consensus pursuant to their agreement, whereas torts arise from breaches of duties imposed by law as a matter of policy. *Id.* at 486-87. "When a plaintiff alleges that the defendant

committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." ***Freestone v. New Eng. Log Homes, Inc.***, 819 A.2d 550, 554 (Pa. Super. 2003) (citation omitted). "The test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole." ***Id.*** (citation omitted).

> An eviction is an act by a landlord or a third person that interferes with a tenant's possessory right to the demised premises. ***See Oakford v. Nixon***, 177 Pa. 76, 81, 35 A. 588, 589 (1896). ***See also*** 49 Am.Jur.2d Landlord and Tenant § 300 (1970). If that act is wrongful, the tenant may sue for damages in trespass or assumpsit. ***See Kelly v. Miller***, 249 Pa. 314, 316–17, 94 A. 1055, 1056–57 (1915) ("[T]here is an implied covenant for the quiet enjoyment of the demised premises, and it is settled in this State that any wrongful act of the landlord which results in an interference of the tenant's possession, in whole or in part, is an eviction for which the landlord is liable in damages to the tenant.").

***Kuriger v. Cramer***, 498 A.2d 1331, 1338 (Pa. Super. 1985). Without a possessory right, there can be no eviction, wrongful or otherwise. Chhaya does not allege that it ever entered into a lease; rather, its theory is that it had a right to occupy the space under the Management Agreement, and that it was an authorized assignee of Cigar Wala's rights under its lease. It argues that the affidavit of Dhanji Desai supports its claim and that therefore summary judgment was inappropriate.

The Desai Affidavit substantially amounts to Dhanji Desai's opinion as to the proper interpretation of the Management Agreement. Chhaya

- 15 -

acknowledges, as it must, that it had no lease here. It is for the trial court to interpret the contract, and to determine the credibility of proffered evidence.

We can find no error in the trial court's decision here. A management agreement is an agreement about performing labor, not about a tenancy or the transfer or property, unless the terms of the agreement make explicit that it also encompasses rights of tenancy or some other topic not generally a part of such agreements. Chhaya has not cited any term of the Management Agreement that supports its claim as to unlawful eviction or conversion. Thus, the claim fails.

Chhaya also argues that the trial court erred in applying the gist of the action doctrine *sua sponte* to bar its tort claims. Further, Chhaya argues that because Appellees were arguing at summary judgment that no contract existed, it was inappropriate for the trial court to find that the breach claim should eclipse the tort claims under the gist of the action doctrine.

Chhaya's claims of error put the cart before the horse by placing the burden on establishing its claims everywhere but on itself. Any party pleading tort and breach of contract to address the same harm must understand that they cannot "double prove" their case — the alleged harms and damages are only what they can establish them to be. The trial court was not mistaken in prioritizing the breach claim, because where the parties take the time to specify the terms of their relationship, those terms must take precedent over the more general "default" terms of relating that the tort regime addresses. This is the

essence of the gist of the action doctrine. Regardless of the arguments the parties made in their summary judgment motions, the gist of the action doctrine is Pennsylvania law, and the trial court did not err in applying it to prioritize the breach claim. It was not Appellees' obligation to plead gist of the action, but Chhaya's responsibility to establish each of its claims sufficiently to survive summary judgment, as a matter of Pennsylvania law.

Further, as stated above, the trial court correctly concluded that Chhaya's claims for wrongful eviction and conversion were fatally flawed in any event, because Chhaya had not demonstrated that it was a tenant or that it had any right to the allegedly "converted" property that was not covered by the Management Agreement. Therefore, even without application of the gist of the action doctrine, Chhaya's claims fail.

Chhaya's argument that the trial court's ruling was erroneous because it was inconsistent with Appellees' argument is curious. Chhaya was bringing a breach claim, so the fact that Appellees argued that no contract was formed is no limit on the trial court's power to find breach, which it eventually did. Chhaya cites a case where a trial court applied the gist of the action doctrine to bar tort claims and subsequently found that there was no binding contract, and this Court reversed. Chhaya's Brief at 59, *citing* ***Telwell Inc. v. Grandbridge Real Estate Capital, LLC***, 143 A.3d 421, 429 (Pa. Super. 2016). Chhaya ultimately prevailed on its breach claim, so ***Telwell*** is inapposite.

Chhaya argues that the trial court should have pierced the corporate veil or found Shah and Patel liable, because the trial court erroneously viewed the breach and damages as arising from Dhanji Desai's actions rather than the actions of Shah and Patel. Chhaya's Brief at 61-70.

The trial court asserts that Chhaya waived this claim by not raising it in pleadings or otherwise preserving it at trial. Trial Ct. Op., 1/27/20, at 9. As to the merits of the argument, the trial court points to a paucity of evidence supporting piercing the veil. *Id.* at 9-10. Because of Dhanji Desai's fraud and resistance to relinquishing control, Shah and Patel lacked the requisite control over Cigar Wala's finances to support veil-piercing. *Id.*

The "legal fiction of a separate corporate entity was designed to serve convenience and justice, [ ] and will be disregarded whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of corporate entity rendered useless." *Ashley v. Ashley*, 393 A.2d 637, 641 (Pa. 1978) (citations omitted). "[T]here is a strong presumption in Pennsylvania against piercing the corporate veil." *Lumax Industries, Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995) (citation omitted).

Our courts consider the following factors when determining whether to pierce the corporate veil: undercapitalization; failure to adhere to corporate formalities; substantial intermingling of corporate and personal affairs, and use of the corporate form to perpetrate a fraud. *Lumax Industries*, 669 A.2d at 895. This Court has relied on the elements of common law fraud in applying

the **Lumax Industries** factors. **See, e.g., Fletcher-Harlee Corp. v. Szymanski**, 936 A.2d 87, 100-01 (Pa. Super. 2007).

Initially we note Chhaya's failure to demonstrate that this claim of error is preserved. A review of the record, including Chhaya's Amended Complaint, confirms that the trial court was correct to conclude that this claim is waived.

> On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction . . . one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

**In re S.C.B.**, 990 A.2d 762, 767 (Pa. Super. 2010) (citation omitted).

Regardless, this claim is meritless. Chhaya cites **Fletcher-Harlee** in support of its argument, emphasizing the fourth **Lumax** factor, fraud. Chhaya's Brief at 62-63. Chhaya claims that it is Shah and Patel, and not Dhanji Desai, who are responsible for fraudulent behaviors that allegedly harmed Chhaya. The trial court disagreed:

> We found that even though [a prior court ruling] awarded legal majority ownership of Cigar Wala to [Shah and Patel] on June 18, 2014, as late as May 11, 2015, they were unable to control Cigar Wala's finances. In reality, Dhanji Desai had failed to relinquish control of Cigar Wala and through no fault of [Chhaya], Cigar Wala's rent and lottery bills were unpaid. Clearly, neither [Shah nor Patel] benefited from the fraud perpetrated by Dhanji Desai.

Trial Ct. Op., 1/27/20, at 10. It would be inequitable and contrary to the letter and the spirit of Pennsylvania law to allow veil-piercing where Shah and Patel had a right to control corporate assets but were unlawfully frustrated in their

attempts to do so, to their detriment. Chhaya has not demonstrated an abuse of discretion in the factfinder's determination; in addition to being waived, this claim is meritless.

Finally, Chhaya argues that the trial court erred in failing to award pre-judgment interest. Chhaya asserts that such interest is a matter of right under Pennsylvania law. Chhaya raised this argument in its post-sentence motion, which was denied. *See* Order, 4/1/19.

"We review a denial for pre-judgment interest for an abuse of discretion." ***Davis v. Borough of Montrose***, 194 A.3d 597, 612 (Pa. Super. 2018) (citation omitted). Under Pennsylvania law, recovery of pre-judgment interest may be recovered where:

> (1) a defendant commits a breach of a contract **to pay a definite sum of money**; or
>
> (2) a defendant commits a breach of contract to render a performance **the value of which in money is stated in the contract**; or
>
> (3) a defendant commits a breach of contract to render a performance **the value of which is ascertainable by mathematical calculation from a standard fixed in the contract**; or
>
> (4) a defendant commits a breach of a contract to render a performance **the value of which in money is ascertainable from established market prices of the subject matter**[.]

***Id.*** at 613 (citation omitted and emphases added). Otherwise, pre-judgment interest is a discretionary matter, in light of all relevant circumstances,

including deficiencies in the injured party's performance and any unreasonableness in that party's demands. *Id.*

Chhaya's argument elides a central weakness. As stated above, courts considering a claim for pre-judgment interest must begin with contract interpretation. *Davis*, 194 A.3d at 613. Without such a provision in the contract, it is difficult to make the claim that one is entitled as a matter of law to pre-judgment interest. Chhaya says first that the trial court accepted its expert's findings, adopting the arithmetic therefrom. Chhaya's Brief at 71. Then, Chhaya says "[t]here is no dispute that the [t]rial [c]ourt awarded damages which were ascertainable by mathematical calculation from a standard fixed in the Management Agreement." *Id.* However, Chhaya does not cite this standard, nor the provision in the Management Agreement where the fixed standard appears. By this reasoning, in any case where a trial court reaches an appropriate "ascertainable" amount of remuneration for breach (that is, any definite amount of money), pre-judgment interest would be mandated. That is not the law. The fourth factor outlined in *Davis* is not meant to swallow the rule — this would be a patently absurd result. Without more, we cannot find that the trial court abused its discretion.

For these reasons, we largely affirm the trial court. However, we must remand to afford the trial court an opportunity to correct its arithmetic.

Judgment vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins this Memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2020